ARMSTRONG, Judge.
The plaintiff, Sterling Hayes, was suspended from his employment as a police officer with the New Orleans Police Department (NOPD) on three separate occasions. Following a hearing the Civil Service Commission upheld the suspensions of five days, twenty days and forty-eight days. On appeal plaintiff is appealing his suspensions for five days and forty-eight days.
The record reflects that during the period of time in question, February 20, 1984— October 2, 1984, plaintiff frequently took sick leave and sought medical attention for work related medical problems. The seriousness of these problems was not contested at trial. While seeking medical attention, plaintiff on two occasions left the boundaries of his district without specific authorization from either his supervisor or dispatcher and, as a result, received the first suspension herein at issue.
Additionally, while on sick leave, plaintiff on over twenty instances left his place of confinement without providing his unit with his destination. He also left his place of confinement for periods of time much in excess of what was necessary to eat, obtain medication, etc. When an internal investigation into these and other alleged violations of police department rules was initiated, plaintiff refused to give a written statement. Plaintiff's failure to provide information while on sick leave and his refusal to give a statement resulted in his suspension for forty-eight days.
The appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Disciplinary *266 action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service, (citations omitted).
Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983).
Plaintiff's first suspension was based on his twice leaving the boundaries of the sixth district on April 9, 1984 without proper authorization. NOPD rules require that “members shall remain within the boundaries of their assigned District except when specifically authorized by their supervisor or a dispatcher.” The plaintiff testified that each time he left the District he first informed the dispatcher that he was leaving and that in each instance the dispatcher responded “10-4”, i.e., “message received.” Because he did not receive a negative response from the dispatcher, plaintiff contends that he had specific authorization to leave. We disagree.
Given the nature of a police officer’s duties and the frequent emergencies which can arise, it is clear that the term “specific authorization” contemplates more than a mere acknowledgment of “message received.” While an acknowledgment of “message received” might conceivably constitute a passive authorization, it hardly rises to the specific authorization contemplated by the rule.
Plaintiff next argues that the Civil Service Commission erred in finding that he had refused to give a statement.
Rule 5, paragraph 12 of NOPD’s Departmental Rules and Procedures provides:
RULE 5, PARAGRAPH 12: INTERNAL INVESTIGATIONS:
When officially informed that an internal investigation is being conducted, a member shall cooperate with the investigation provided that: 1) the investigation is narrowly directed and specifically related to the scope of employment and operations of the Department or to alleged violations of law, Department Rules, procedures, and/or Civil Service Rules; 2) the investigation is conducted in accordance with Department policy, rules, procedures, and orders.
The record reflects that when Sergeant Johnson ordered plaintiff to come to the police station to give a statement, plaintiff inquired as to the purpose of the statement and was told that he’d find out when he got to the station. Plaintiff then indicated that he was on medication and, therefore, could not give a statement. Sergeant Johnson offered to either take the statement at plaintiff’s home or have him transported to the station to give the statement. Plaintiff refused both suggestions and stated that he wanted to talk to his lawyer. After the conversation ended plaintiff allegedly fell asleep for several hours and by the time he called Sergeant Johnson back several hours later, he had already been suspended.
Plaintiff contends that because he was not told why he was to give a statement, he was not required to cooperate. He further denies ever refusing to give a statement.
Although plaintiff did not specifically refuse to give the statement, under the facts of this case we find nothing arbitrary or capricious in the Civil Service Commission’s finding that plaintiff did so refuse. Merchant v. Dept. of Finance, 391 So.2d 587 (La.App. 4th Cir.1980). Additionally, we do not believe that plaintiff was justified in refusing to give a statement merely because Sergeant Johnson would not inform him over the telephone as to the nature of the investigation. Sergeant Johnson specifically told plaintiff that he would be informed about the nature of the investigation when he arrived at the station and then attempted to accommodate plaintiff by providing several reasonable options. For these reasons, plaintiff’s argument is without merit.
Plaintiff next argues that the Civil Service Commission erred in upholding his forty-eight day suspension as that suspension was based in part on his alleged failure to *267 comply with what he asserts are ambiguous rules.[1]
The defendant asserts that while on sick leave the plaintiff frequently left his place of confinement either without first informing his unit that he was leaving or without stating his destination. The defendant also argues that plaintiff often left his place of confinement for periods of time longer than was necessary to eat, obtain medication, etc. Plaintiff counters these assertions by arguing that under a fair reading of NOPD’s rules and regulations, an officer on sick leave does not have to call in when leaving his place of confinement if he has provided his supervisor with a doctor’s slip indicating the estimated date of his return to work. Plaintiff had provided his supervisor with a slip stating that he would be out of work from four to eight weeks.
When read as a whole, the regulations do support plaintiffs argument. At the very least they are ambiguous as to when an officer on sick leave is required to report in if he has previously provided his superiors with the anticipated date of his return. We therefore find that the Civil Service Commission erred in suspending plaintiff for failing to report in prior to leaving his place of confinement while on sick leave. Accordingly, to the extent that plaintiffs suspension of forty-eight days is based on this alleged violation, it must be set aside and the duration of plaintiffs suspension must be reconsidered by the Commission.
For the foregoing reasons, plaintiffs suspensions for five and twenty days respectively are affirmed. Plaintiffs suspension for forty-eight days is set aside and ■ the matter is remanded for the limited purpose of determining the duration of plaintiffs suspension for failing to give a statement.
Affirmed in Part
Reversed in Part
Remanded.
MOTION FOR REHEARING AND/OR CLARIFICATION DENIED
Having set aside that portion of plaintiffs October 3,1984 to November 19,1984 suspension relative to his alleged failure to comply with the provisions of ASOP-75:7, this court remanded in order for the Civil *268 Service Commission to re-evaluate and determine the extent of plaintiffs suspension in light of the remaining allegations and to consider whether plaintiffs conduct impaired the efficient operation of the public service so as to warrant his dismissal.

.The police department’s rules and regulations relative to reporting in while on sick leave provide in pertinent part:
ASOP 75.0
REPORTING AND RECORDING SICK LEAVE
1. If a member is unable to report for duty due to illness or injury he shall inform his supervisor (or supervisor’s designee) before his tour of duty begins. If the member is detailed he shall notify both the unit of temporary assignment and the unit of permanent assignment. If the member is assigned to a unit which is not open on a 24 hour basis, he shall notify his unit as soon as the unit is open.
If a member is unable to complete a tour of duty due to illness or injury he shall notify his supervisor (or supervisor’s designee) before leaving his assignment.
The member shall notify his unit(s) each day that he reports sick and when he returns to work, except as stipulated in paragraph 2.
2. Each day that he uses sick leave, the member shall call in as stipulated in paragraph 1, except in the following case:
If a member reports his estimated date of return to work, he is not required to call in each day of his absence.
3.Each day that a member uses sick leave he shall furnish the following information when he calls in, except as stipulated in paragraph 2.
A. Name, residence address, resident telephone.
B. Nature of illness or injury, whether the illness or injury was sustained in the performance of duty and, if applicable the item number of the incident.
C. Place of confinement and telephone number if different from the member’s residence.
D. Name of doctor, clinic, or hospital, if any, who has been consulted or is treating the illness or injury.
******
7. A member on sick leave shall remain in his residence or approved place of confinement for the entire sick leave period, except to visit a physician, hospital or clinic or to obtain meals or medicine.
******
ASOP 76.0
13. Members who absent themselves from duty as a result of a job related injury or recurrence shall make notification as required by 75.0.